UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMBER HAWTHORNE, et al.,

          Plaintiffs,

     v.

UMPQUA BANK,

          Defendant.

Case No.  11-cv-06700-JST

**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS**

Re: ECF No. 103

Before the Court is Plaintiffs' unopposed motion for preliminary approval of the settlement and for certification of the settlement class.  ECF No. 103.  For the reasons discussed below, the Court will GRANT the motion, with some modifications, conditionally certify the settlement class, appoint class counsel and class representatives, direct the distribution of class notice, and make a preliminary determination that the settlement is "fair, reasonable, and adequate" under Rule 23(e)(2) of the Federal Rules of Civil Procedure.

## I.    BACKGROUND

This is a putative class action against Umpqua Bank, brought on behalf of debit card account holders who incurred overdraft fees on their Umpqua bank accounts.  ECF No. 1. Generally, Plaintiffs allege that Umpqua uses a practice of re-ordering debit card transactions, so that higher dollar amount transactions are assessed against Plaintiffs' accounts first, even if they occurred later in time than lower dollar amount transactions.  Id.  This has the effect of maximizing the number of overdraft fees, imposing more fees than Plaintiffs would otherwise pay, and depleting Plaintiffs' accounts more quickly than would otherwise be the case.  Id.; see also ECF No. 58 at 2 (summarizing allegations).  Plaintiffs seek restitution, damages, and declaratory relief.  ECF No. 1.

Plaintiffs amended their complaint in February 2012, ECF No. 15, and Defendant filed a motion to dismiss the complaint in March 2013, ECF No. 18.  The Court dismissed Plaintiffs' unconscionability claim, but otherwise denied the motion.  ECF No 32.

Shortly after the Court's ruling on the motion to dismiss, in May 2012, the parties began preliminary settlement discussions.  ECF No. 104, Ex. B, ¶ 9.  Defendant then provided information regarding its overdraft fee revenue to Plaintiffs for review by Plaintiffs' counsel and expert.  Id.  Thereafter, in August 2012, the parties participated in mediation, but did not reach a settlement.  Id. ¶ 11.

The parties then proceeded to litigate the action by engaging in discovery.  ECF No. 104 at 3.  They served written discovery requests, interrogatories, and requests for admission, and Umpqua turned over more than 64,000 pages of documents and electronically stored information, which Plaintiffs' counsel reviewed and analyzed.  Id.  Plaintiffs' counsel took two depositions pursuant to Federal Rule of Civil Procedure 30(b)(6).  Id. at 3-4.

On May 7, 2013, Umpqua filed a motion for judgment on the pleadings, ECF No. 40, which the Court granted in part and denied in part in October 2013, ECF No. 58.  The Court granted the motion as to Plaintiffs' claims for violation of one prong of California's Unfair Competition Law, breach of the implied covenant of good faith and fair dealing, breach of contract, and unjust enrichment.  Id.  Plaintiffs' claim for conversion and claim under another prong of the Unfair Competition Law survived.  Id.  In the meantime, Plaintiffs filed a second amended complaint.  ECF No. 56.

Plaintiffs then sought leave to file a third amended complaint, which the Court granted.  ECF No. 81.

In April 2014, the parties agreed on the material terms of a settlement and signed a summary agreement memorializing the results of their negotiations, including Defendant's agreement to pay $2.9 million as a common-fund class settlement, subject to this Court's approval.  ECF No. 104 at 4-5.  After three additional months of negotiation, in June 2014, the parties signed the settlement agreement at issue here.  Id. at 5.

United States District Court
Northern District of California

## II.      CONDITIONAL CLASS CERTIFICATION

Class certification under Rule 23 is a two-step process.  First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy.  "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied."  Wang v. Chinese Daily News, Inc., 709 F.3d 829, 833 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)).

Second, a plaintiff must establish that one of the bases for certification in Rule 23(b) is met.  Here, by invoking Rule 23(b)(3), Plaintiff must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met.  See Wal–Mart, 131 S. Ct. at 2551.

### A.      Rule 23(a)(1)—Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Numerosity is satisfied here because the proposed settlement class includes approximately 48,500 members.  ECF No. 104 at 17.

In addition, while not enumerated in Rule 23, "courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'"  Vietnam Veterans of Am. v. C.I.A., 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)).  "[A] class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'"  Id. (quoting O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

The Court finds that the class definition contained in the settlement agreement satisfies this requirement.

United States District Court
Northern District of California

### B. Rule 23(a)(2)—Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For the purposes of Rule 23(a)(2), even a single common question is sufficient. Wal-Mart, 131 S. Ct. at 2556 (internal quotations omitted). The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2551. "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Id. (quotation omitted).

The Court finds that the proposed class satisfies the commonality requirement because, at a minimum, the issue of the order in which Defendant assessed overdraft fees, as well as Defendant's defenses, apply to the class as a whole.

### C. Rule 23(a)(3)—Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Id. (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

The Court finds that the proposed class representatives, Plaintiffs Amber Hawthorne, and Christopher and Victoria Kneer, are typical of the class they seek to represent. They allege they suffered the same injury, in the same manner, as the proposed class. Moreover, the claims of the entire class are based on Defendant's uniform conduct in assessing overdraft fees.

### D. Rule 23(a)(4)—Adequacy of Representation

"The adequacy of representation requirement . . . requires that two questions be addressed:

4

(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000).  The requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158 n.13 (1982)).  Among other functions, these requirements serve to determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Falcon, 457 U.S. at 158 n.13.  Adequacy of representation requires two legal determinations: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

No evidence in the record suggests the proposed class representatives or proposed class counsel have a conflict of interest with other class members.  Plaintiffs' counsel are qualified and competent, and have had extensive experience prosecuting complex class actions, including consumer actions similar to the present case.  The Court finds that proposed class counsel and the named Plaintiffs have and will continue to prosecute this action vigorously on behalf of the class. The adequacy requirement is therefore satisfied.

### E.      Rule 23(b)(3)—Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem, 521 U.S. at 623.  "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'"  Hanlon, 150 F.3d at 1022 (quotation omitted).

United States District Court
Northern District of California

Here, the Court finds that the common questions raised by Plaintiffs' claims predominate over any questions affecting only individual members of the proposed class.  In particular, Plaintiffs allege that Defendant improperly assessed overdraft fees to its customers' debit accounts in highest to lowest order, in a manner that resulted in customers being charged excessive overdraft fees.  All class members are alleged to have been subject to the same practice of assessing fees.  The predominance requirement is therefore satisfied.

Next, "[t]he superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." Id. at 1023.  Here, because common legal and factual questions predominate over individual ones, the Court finds that the judicial economy achieved through common adjudication makes a class action superior to the alternative procedures for adjudicating the claims of the members of the proposed class.

*      *      *

Because each element of Rules 23(a) and 23(b)(3) are satisfied, the Court finds that conditional certification of the proposed settlement class defined below is appropriate:

> All Umpqua Bank customers in the United States who, within the Class Period [January 1, 2006 through October 15, 2010], incurred an overdraft fee as a result of Umpqua's practice of sequencing Debit Card Transactions in highest to lowest dollar amount order.

**F.      Appointment of Class Representatives and Class Counsel**

Because the Court finds that Plaintiffs Amber Hawthorne, and Victoria and Christopher Kneer meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as class representatives.

In addition, when a court certifies a class, the court must appoint class counsel and must consider:

> (i)      the work counsel has done in identifying or investigating potential claims in the action;
> (ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii)    counsel's knowledge of the applicable law; and
> (iv)     the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' counsel have thus far vigorously prosecuted this action by: (1) filing and amending Plaintiffs' complaint three times; (2) defending against a motion to dismiss and motion for judgment on the pleadings, and partially succeeding in both instances; (3) investigating class members' potential claims; (4) propounding and reviewing discovery; (5) analyzing, with the help of an expert, data Defendant provided in discovery; (6) taking two Rule 30(b)(6) depositions of Defendant; (7) participating in a mediation session; (8) negotiating a summary settlement agreement and then negotiating for a further three months to come to a final settlement agreement; and (9) briefing the instant motion for preliminary approval. In addition, Plaintiffs' counsel has significant prior experience prosecuting overdraft-fee class actions. For these reasons, the Court will appoint Jeffrey M. Ostrow as lead class counsel and the remaining Plaintiffs' counsel as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

## III. PRELIMINARY APPROVAL OF CLASS SETTLEMENT

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Courts generally employ a two-step process in evaluating a class action settlement. First, courts make a "preliminary determination" concerning the merits of the settlement and, if the class action has settled prior to class certification, the propriety of certifying the class. See Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." City of Seattle, 955 F.2d at 1276. Where the parties reach a class action settlement prior to class certification, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotations omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of

7

1    certain class members to infect the negotiations." In re Bluetooth Headset Prods. Liab. Litig., 654

2    F.3d 935, 947 (9th Cir. 2011).

3         The Court's task at the preliminary approval stage is to determine whether the settlement

4    falls "within the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d

5    1078, 1080 (N.D. Cal. 2007) (quotation omitted); see also MCL, 4th § 21.632 (explaining that

6    courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of

7    the settlement terms and must direct the preparation of notice of the certification, proposed

8    settlement, and date of the final fairness hearing."). Second, courts must hold a hearing pursuant

9    to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and

10   adequate." Here, Plaintiffs ask the Court to take the first step in granting preliminary approval to

11   the proposed settlement.

12        Preliminary approval of a settlement is appropriate if "the proposed settlement appears to

13   be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

14   not improperly grant preferential treatment to class representatives or segments of the class, and

15   falls within the range of possible approval." In re Tableware, 484 F. Supp. 2d at 1079 (quotation

16   omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion,

17   consistent with counsel's fiduciary obligations to the class. Hanlon, 150 F.3d at 1027 ("Settlement

18   is the offspring of compromise; the question we address is not whether the final product could be

19   prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a

20   settlement proposal, courts must balance a number of factors:

21            the strength of the plaintiffs' case; the risk, expense, complexity, and
             likely duration of further litigation; the risk of maintaining class
22            action status throughout the trial; the amount offered in settlement;
             the extent of discovery completed and the state of the proceedings;
23            the experience and views of counsel; the presence of a governmental
             participant; and the reaction of the class members to the proposed
24            settlement.

25   Id. at 1026 (citations omitted). The proposed settlement must be "taken as a whole, rather than the

26   individual component parts" in the examination for overall fairness. Id. Courts do not have the

27   ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its

28   entirety." Id.

United States District Court
Northern District of California

1    Here, the Court finds that the settlement is "the product of serious, informed, non-

2  collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

3  treatment to class representatives or segments of the class, and falls within the range of possible

4  approval." In re Tableware, 484 F. Supp. 2d at 1079.

5    First, nothing in the record suggests the settlement negotiation process was collusive.  The

6  settlement was reached at arms-length with the use of a professional mediator and over the course

7  of months of effort by both parties.

8    Second, the settlement amount is adequate when compared to the total potential damages

9  in the case.  Plaintiffs estimate that class members will receive 37.6% of the total damages they

10  would receive at trial should they prevail.  The Court finds that a net recovery of 37.6% is fair,

11  adequate, and reasonable in light of the strength of Plaintiffs' case, and the risk, expense,

12  complexity, and likely duration of this litigation.

13    Third, the stage of the proceedings weighs in favor of approval.  Though the settlement

14  was reached prior to class certification, the parties engaged in adequate discovery:  Plaintiffs took

15  two Rule 30(b)(6) depositions of Defendant, Defendant provided Plaintiffs 64,000 pages of

16  documents, which Plaintiffs' counsel reviewed with the help of an expert, and the parties

17  exchanged written discovery requests, interrogatories and requests for admissions.  Moreover, the

18  parties actively litigated this case for more than two years before they agreed to this settlement.

19  Plaintiffs have amended their complaint three times, and the action has proceeded through a

20  motion to dismiss, a motion for judgment on the pleadings, and a mediation session.

21    Fourth, Plaintiffs' counsel is experienced in overdraft-fee litigation, has actively

22  participated in the litigation of this action, and endorses the settlement.  ECF No. 104 at 1, 19-20.

23    Fifth, no governmental actor is relevant to this action, rendering the factor immaterial to

24  the settlement approval process.

25    Sixth, the Court must wait until the final approval hearing to assess class members'

26  reaction to the settlement.

27    Finally, the Court finds the parties' agreement with respect to attorneys' fees and service

28  enhancement awards for named Plaintiffs Amber Hawthorne, and Christopher and Victoria Kneer

United States District Court
Northern District of California

9

1    falls "within the range of possible approval."  The Court will evaluate the requests for fees and

2    service enhancement awards at the final approval hearing, after Plaintiffs' counsel file their motion

3    for fees and costs, and the class has an opportunity to object.[1]

4          For the foregoing reasons, the Court will preliminarily approve the class action settlement.

5    **IV.    CONDITIONAL APPROVAL OF NOTICE PLAN**

6          The class notice in a Rule 23(b)(3) class action must comport with the requirements of due

7    process.  "[T]he plaintiff must receive notice plus an opportunity to be heard and participate in

8    litigation, whether in person or through counsel."  The notice must be "the best practicable,"

9    "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of

10   the action and afford them an opportunity to present their objections."  <u>Philips Petroleum Co. v.</u>

11   <u>Shutts</u>, 472 U.S. 797, 812 (1985) (citations omitted).  "The notice should describe the action and

12   the plaintiffs' rights in it."  <u>Id.</u>  Rule 23(c)(2)(B) provides, in relevant part:

13              The notice must clearly and concisely state in plain, easily
                understood language: (i) the nature of the action; (ii) the definition
14              of the class certified; (iii) the class claims, issues, or defenses; (iv)
                that a class member may enter an appearance through an attorney if
15              the member so desires; (v) that the court will exclude from the class
                any member who requests exclusion; (vi) the time and manner for
16              requesting exclusion; and (vii) the binding effect of a class judgment
                on members under Rule 23(c)(3).
17

18         Additionally, "an absent plaintiff [must] be provided with an opportunity to remove

19   himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to

20   the court."  <u>Id.</u>

21         The parties propose to use Epiq Systems, Inc. as the claims administrator for the class.

22   Epiq will provide notice; establish and maintain a post office box, a website, and a toll-free

23   telephone line in order to communicate with class members; calculate awards; process requests for

24   exclusion; process and transmit distributions to settlement class members; perform certain tax-

25   related services; verify that Defendant has correctly made distributions to settlement class

26

27   _____

     [1] The Court notes, however, that Plaintiffs' counsel's request for attorneys' fees totaling 33% of
28   the settlement fund is above the "benchmark" the Ninth Circuit has established for class action
     attorneys' fee awards.  <u>See</u> <u>In re Bluetooth</u>, 654 F.3d at 942.

members who currently have accounts with Defendant; and provide weekly reports and a final report to counsel for the parties.  ECF No. 104-1 at 10-11.

The parties' proposed notice plan has three parts: mailed notice via a direct-mail postcard, publication notice via newspaper, and a long-form notice posted to the settlement website (and which the parties will provide by U.S. mail upon request).  Id. at 8.

The postcard notice briefly explains that a settlement has been reached, who is included in the settlement, the gross settlement terms, and that class members may opt-out or object to the settlement.  See ECF No. 104-1, Ex. 1.  It also contains the settlement website address, and the settlement administrator's toll-free telephone number.  Id.  To effect notice by mail, the settlement administrator will use known addresses of members of the settlement class (i.e., those who currently have Umpqua Bank accounts), and will run the last known addresses of other class members through the National Change of Address Database to ascertain current addresses.  ECF No. 104-1 at 14.  For mailed notices that are returned as undeliverable, the settlement administrator will perform address traces and re-mail the notices.  Id.  Mailed notice will be completed no later than sixty days before the final approval hearing.  Id.

Publication notice will involve a one-time 3-column-by-10.5" advertisement placed in one weekday edition each of the following newspapers, which cover the major markets in which Defendant operated bank branches during the class period: The Eugene Register-Guard, Medford Mail Tribune, Sacramento Bee, San Francisco Chronicle, Seattle Times, and the Oregonian.  Id. at 15.  This notice contains much of the same information that the postcard does, but in more detail, and will be completed no later than twenty-eight days after the date of this order.

The long-form notice, which will be available on the settlement website, www.umpquabankoverdraftsettlement.com, contains more information than the postcard and publication notices do.  ECF No. 104 at 9.  For example, it contains specific opt-out and objection instructions.  See ECF No. 104-1, Ex. 3.  The settlement website will also contain links to the settlement agreement and this order, along with any documents the parties' counsel agree to post.  ECF No. 104 at 9.  The website will be established after this order is entered.  Id.

To opt-out of the settlement, putative class members must send a letter containing certain

1    information to the settlement administrator. ECF No. 104-1, Ex. 3 at 5. The letter must be

2    postmarked no later than the last day of the opt-out period. ECF No. 104 at 9.

3         To object to the settlement or to class counsel's application for attorneys' fees, costs,

4    expenses, and service awards, class members must send a letter to the Clerk of the Court, class

5    counsel, and Umpqua Bank's counsel. ECF No. 104-1 at 12. As proposed, any objection must

6    contain fairly detailed information about the objector (e.g., a description of the number of times

7    the objector or objector's counsel has objected to a class settlement in the last five years, and any

8    agreement related to the settlement between the objector or the objector's counsel and any third

9    person or entity). Id. at 12-14. All objections must be postmarked by the last day of the opt-out

10   period. Id. at 12.

11        Umpqua Bank will serve CAFA notice within 10 days of the date of this order. ECF No.

12   104 at 25.

13        The Court finds the parties' notice plan comports with due process requirements. In

14   addition, the Court will approve the form of the proposed notices, subject to the following

15   alterations:

16       1.   All forms of notice—the postcard notice, the publication notice, and the long-form
            notice—shall provide class members a phone number with which they can directly
17          reach class counsel;

18
         2.   All forms of notice shall provide class members instructions as to how to access the
19          case docket via PACER or in person at any of the locations of the District Court for
            the Northern District of California;
20

21       3.   Both the postcard and the publication notice shall indicate that the hearing date for
            final approval of the settlement may change without further notice to the class (only
22          the long-form notice currently contains this information);

23       4.   For a class member to request exclusion from the settlement, the only information
            the class member must provide in a letter to the settlement administrator is: (1) the
24          class member's name, (2) a statement that he or she wishes to be excluded from the
            settlement class in Hawthorne v. Umpqua Bank, Case No. 3:11-cv-06700-JST, and
25          (3) his or her signature. Class members' telephone numbers and addresses are not
            required, as is currently indicated in the long-form notice;
26

27       5.   Any objections to the settlement should only be mailed to the Court. Once received
            by the Court, the Clerk of the Court will file the objections on the Court's
28

United States District Court
Northern District of California

12

United States District Court
Northern District of California

electronic filing system.  As currently worded, the notices require objections to be sent to Plaintiffs' and Defendant's counsel, which is unnecessary, as electronic filing of an objection on the case docket constitutes service on the parties; and

6.      Objectors will not be required to provide all of the detailed information that is requested in the long-form notice.  *See* ECF No. 104-1, Ex. 3 at 6-7.  Instead, objectors must only provide the information requested in the following proposed language:

You may object to the proposed settlement in writing by providing your full name, the basis for your belief that you are a member of the settlement class, the basis of your objection, and your signature.  You may not ask the Court to order a larger settlement; the Court can only approve or deny the settlement.  You may also appear at the Final Approval Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for paying that attorney.

All written objections and supporting papers must: (a) clearly identify the case name and number (*Hawthorne v. Umpqua Bank*, Case No. 3:11-cv-06700-JST); (b) be submitted to the Court either by mailing them to Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern District of California; and (c) be filed or postmarked on or before December 12, 2014.

The parties may elect to use this format, or adopt a different format requesting the same, but not more, information.

## CONCLUSION

For the foregoing reasons, the Court hereby:

1.      GRANTS preliminary approval of the settlement,

2.      CERTIFIES for settlement purposes the proposed settlement class,

3.      APPOINTS Amber Hawthorne, and Victoria and Christopher Kneer as class representatives,

4.      APPROVES the proposed notice program, and the content of the notices with the modifications discussed above,

5.      APPROVES and ORDERS that the proposed opt-out and objection procedures be undertaken, with the modifications discussed above,

6.      STAYS the action against Umpqua Bank pending final approval of the settlement,

and

7.      SETS the final approval hearing for February 19, 2014.  On or before October 13, 2014, the settlement administrator shall complete the initial mailing of postcard notices.  The opt-out period shall last for at least sixty days, beginning on the date that the settlement administrator completes the initial mailed notice and ending not sooner than December 19, 2014.  All mailed notice shall be completed on or before December 12, 2014.  Plaintiffs shall file their motion for final approval of the settlement, and their application for attorneys' fees, costs, expenses, and service awards no later than January 5, 2015.

**IT IS SO ORDERED.**

Dated:  September 15, 2014

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

14