UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER HAWTHORNE, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>UMPQUA BANK,<br><br>   Defendant. | Case No. 11-cv-06700-JST<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS**<br><br>ECF Nos. 108, 110 |

Two motions are pending in this putative class action for breach of contract and related claims. First, Plaintiffs Amber Hawthorne, Christopher Kneer, and Victoria Kneer (collectively "Plaintiffs") move for an order granting final approval of the parties' settlement agreement. ECF No. 108. Second, Plaintiffs move for an award of attorneys' fees, litigation costs, and service enhancement awards to Amber Hawthorne, Victoria Kneer, and Christopher Kneer as class representatives. ECF No. 110. The Court held a final fairness hearing on February 19, 2015.

For the reasons set forth below, the Court will grant the motion for final approval of the settlement and approve the incentive awards. The Court will also grant an award of $725,000 in attorneys' fees, and will grant in part the request for costs.

**I.   BACKGROUND**

   **A.   Factual History[1]**

This is a putative class action against Umpqua Bank, brought on behalf of debit card account holders who incurred overdraft fees on their Umpqua Bank debit accounts. ECF No. 81. Generally, Plaintiffs allege that Umpqua uses a practice of re-ordering debit card transactions, so

---

[1] A more detailed description of the facts and claims at issue in this action, as well as the action's procedural history, can be found in the Court's September 15, 2014 order, ECF No. 106.

that higher dollar amount transactions are assessed against Plaintiffs' accounts first, even if they occurred later in time than lower dollar amount transactions. Id.  This has the effect of maximizing the number of overdraft fees, imposing more fees than Plaintiffs would otherwise pay, and depleting Plaintiffs' accounts more quickly than would otherwise be the case. Id.; see ECF No. 58 at 2.  In their complaint, Plaintiffs sought restitution, damages, and declaratory relief. ECF No. 81.

By order dated September 15, 2014, the Court (1) granted preliminary approval of the parties' proposed settlement agreement and conditionally certified the putative class for settlement purposes; (2) appointed Plaintiffs Amber Hawthorne, and Victoria and Christopher Kneer as class representatives; and (3) approved the proposed notice program and its contents. ECF No. 106.

**B.  Settlement Agreement**

The settlement agreement defines the settlement class as follows:

> all Umpqua Bank customers in the United States who, within the Class Period, incurred an overdraft fee as a result of Umpqua's practice of sequencing Debit Card Transactions in highest to lowest dollar amount order.

ECF No. 104-1, ¶ 34.  The "Class Period" is January 1, 2006 to October 15, 2010.  ECF No. 108 at 6.

Pursuant to the agreement, Umpqua Bank will create a settlement fund of $2.9 million, which represents 37.7% of the amount that Plaintiffs allege the class would be entitled to if they prevailed at trial. ECF No. 108 at 15. Umpqua Bank deposited $113,447.00 of the fund into the administration account in order to pay for administration costs of the settlement, including the notice program. ECF No. 104-1, ¶ 40. The remainder of the settlement fund (outside of attorneys' fees and costs, and enhancement awards for class representatives) will be distributed to class members who are current account holders by crediting such class members' accounts and notifying them of the credit, or by checks mailed by the settlement administrator. Id., ¶ 71. Past account holders will receive their share of the fund by checks mailed by the settlement administrator. Id. Any funds remaining in the settlement fund after the aforementioned distributions are complete shall be disposed of in a manner consistent with the unclaimed property

laws of the various jurisdictions in which the class members reside. Id. None of the funds will revert to Umpqua Bank.

Further, Plaintiffs seek an award of attorneys' fees in the amount of 33% of the settlement fund and litigation costs for the out-of-pocket expenses class counsel has incurred. Id., ¶ 81. Lastly, Plaintiffs request incentive awards of $5,000 for each of the named Plaintiffs, which will be paid from the settlement fund. Id., ¶ 83.

## II.     FINAL APPROVAL OF THE SETTLEMENT

### A.     Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Id. at 1026. In order to assess a settlement proposal, the district court must

> balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Id.

### B.     Analysis

#### 1.     Adequacy of notice

"The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

The Court previously approved the parties' proposed plan for providing notice to the class. ECF No. 106 at 10-13. The class administrator has fulfilled the notice plan by preparing a class list, mailing notice to class members directly, performing address traces to re-mail the notice to class members whose mail was returned undeliverable, publishing a notice to reach those class

1   members for whom mailed notice was not possible, and making a long form notice available on
2   the settlement website and via U.S. mail upon request. Id. The settlement website contained
3   additional filings that provided members with more detailed information about the action and
4   settlement. Id. The mailed notice program reached approximately 92.9% of the class members
5   after notices were mailed a second time. ECF No. 108-3, ¶ 17.

6   In light of the foregoing, the Court finds that the parties have provided the best practicable
7   notice to class members.

### 2. Fairness, adequacy, and reasonableness

#### a. Strength of Plaintiffs' case

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Here, Plaintiffs acknowledged that they faced the risk of losing at summary judgment, at trial, or on appeal in light of Umpqua Bank's contractual and other defenses. ECF No. 108-1, ¶ 4. Particularly, Umpqua Bank argued that the language in its account agreements with Plaintiffs fully disclosed that Umpqua Bank engaged in debit re-sequencing. Id. Because Plaintiffs contractually authorized this practice, Umpqua Bank argued that it could not be liable for class members' decisions to maintain an account with Umpqua Bank. Id. Umpqua Bank also asserted a preemption defense. As a result, if the case went forward, Plaintiffs would encounter significant obstacles in prevailing on their claims. Id. These uncertainties weigh in favor of approving the settlement. Dyer, 303 F.R.D. at 331 (finding that the relative strength of the plaintiffs' case favored settlement because of the uncertainties surrounding defendant's contractual defenses).

#### b. Risk of continued litigation

The difficulties and risks of litigating this case weigh in favor of approving the class settlement. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).

This factor supports final approval because, without a settlement, Plaintiffs would face additional years of costly litigation and risk recovering nothing. ECF No. 108-1, ¶ 47. Given the relatively small value of individual class members' claims, litigation would be impractical,

requiring the expenditure of both public and private resources disproportionate to individual claims. Id., ¶ 11. If the case proceeded, more experts would have to be retained to perform data analyses and to present those analyses in expert reports at depositions and at trial, adding further expenses to the overall cost of litigation. Id., ¶ 48. Even if Plaintiffs succeeded at trial, Umpqua Bank would have appealed any adverse decision. ECF No. 108 at 13.

### c. Risk of achieving and maintaining class-action status

The potential difficulties associated with achieving and maintaining class certification in this case weigh in favor of approving the settlement. See McKee Foods Corp., 716 F. Supp. 2d at 851 (holding that this factor supports approving a settlement when both parties acknowledge the possibility of decertification).

Here, the Court had not certified the class at the time this settlement agreement was executed, and it is unclear whether certification would have been granted. ECF No. 108 at 15. It is likely that had the case proceeded, Umpqua Bank would have challenged any motion for certification, and would have challenged class certification on appeal in the event of an adverse judgment. Id. Accordingly, this factor weighs in favor of settlement approval. See Rodriguez, 2007 WL 2827379, at *8 (finding that the likelihood that a certification decision would be appealed meant this factor weighed in favor of approval), rev'd on other grounds, 563 F.3d 948 (9th Cir. 2009).

### d. Settlement amount

The proposed $2.9 million settlement represents approximately 38% of what class members could have obtained had they succeeded at trial. ECF No. 108 at 15. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008). In light of Umpqua Bank's defenses and the uncertainties attached to the litigation of these claims, the Court finds the percentage of recovery fair and reasonable. See Dyer, 303 F.R.D. at 331 (holding that "[b]ecause of the uncertainties attached to the litigation of these claims," a recovery of one-third the potential value of class plaintiffs' claims was "fair and reasonable").

### e. Extent of discovery and stage of the proceedings

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).

Here, Plaintiffs benefited from detailed documentation regarding Umpqua Bank's overdraft-fee revenue on debit card transactions and several years' worth of information on the order in which it posted debits. ECF No. 108 at 16. Class counsel asserts that this documentation allowed them to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification. Further, since this case began, the parties have engaged in motion practice, formal and informal discovery, depositions of Umpqua Bank's corporate representative, and mediation and informal settlement talks, and produced thousands of pages of documents and electronically stored information. Id. at 17. The Court is persuaded that the parties conducted sufficient discovery and are at a stage in the proceedings that allows them to make an informed decision regarding the adequacy of the settlement. See In re Omnivision, 559 F. Supp. 2d at 1042 (finding the parties sufficiently informed about the case prior to settling the action because they propounded and reviewed discovery, took depositions, briefed motions, and engaged in mediation).

### f. Counsel's experience

Here, class counsel has demonstrated their experience in litigating similar overdraft fee claims (having litigated overdraft fee class actions throughout the country), and that they are informed about the claims, defenses, and applicable laws governing Plaintiffs' claims. ECF No. 108 at 17-18. No party has provided the Court any evidence to contradict this finding. Accordingly, class counsel's endorsement weighs in favor of approving the settlement. See, e.g., In re Omnivision, 559 F. Supp. 2d at 1043 (finding class counsel's recommendation in favor of settlement presumptively reasonable because counsel demonstrated knowledge about the case and securities litigation in general).

### g. Reaction of the class

Class members' positive reaction to a settlement weighs in favor of settlement approval; "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Id. (citation omitted).

No class member has objected to the settlement. Id. at 18; ECF No. 112. Further, of the 41,633 class members, only two (approximately 0.00005%) have requested exclusion. Id. at 18-19. This factor weighs strongly in favor of approval. See, e.g., McKee Foods, 716 F. Supp. 2d at 852 (finding that 4.86% opt-out rate strongly supported approval); Churchill Vill. LLC v. Gen. Elec., 361 F.3d 566, 577 (9th Cir. 2004) (approving a settlement with forty-five objections and 500 opt-outs from a 90,000-person class, representing .05% and .56% of the class, respectively).

After reviewing these factors,[2] the Court finds the settlement fair, reasonable, and adequate. It therefore grants Plaintiffs' motion for final approval of the settlement.

## III. ATTORNEYS' FEES

### A. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011).

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." Id.

"Because the benefit to the class is easily quantified in common-fund settlements," courts can "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Id. "Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in

---

[2] No governmental entity has participated in this action, so discussion of that factor is omitted.

7

the record of any 'special circumstances' justifying a departure." Id. (citation omitted). In considering whether to adjust the presumptive 25% award upward, district courts may take into account "[e]xceptional results," the risk of non-recovery, any "benefits beyond the case settlement fund" that counsel achieved for the class, counsel's "reasonable expectations . . . based on the circumstances of the case and the range of fee awards out of common funds of comparable size," and any unusual burdens borne by counsel. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002).

"Even though a district court has discretion to choose how it calculates fees . . . it abuses that discretion when it uses a mechanical or formulaic approach that results in an unreasonable reward." In re Bluetooth, 654 F.3d at 944 (citation and internal quotations omitted). "Thus, even though the lodestar method may be a perfectly appropriate method of fee calculation," the Ninth Circuit has "also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." Id. (citations omitted).

**B.     Analysis**

The settlement fund totals $2.9 million. ECF No. 108 at 15. Class counsel seeks an upward revision from the 25% benchmark in attorneys' fees to 33% of the common fund, totaling $957,000.00. Id. at 10. The court assumes for the purposes of this motion that Plaintiffs are correct in calculating class counsel's lodestar: $976,805.35.[3] Based on this information, the lodestar multiplier for a $957,000 fee award is 0.98.

To support the requested 33% fee award, Plaintiffs argue that class counsel expended a significant amount of time and effort litigating this case over the past three years and undertook a major risk by taking it on a contingency basis. EFC No. 110 at 7. This Court has previously explained that contingency-fee litigation is "not a 'special consideration'—it's the nature of the

---

[3] Plaintiffs submitted specific records of hours worked on the case for each attorney, along with summaries of the hours worked on particular categories of tasks. The supplemental briefs contained charts that broke down, by individual attorney for whom fees are claimed, the attorney's work on the case by general category and by specific types of tasks performed within that category, and the total number of hours worked in each category. See ECF No. 110-1 at 5-11; ECF No. 110-2 at 2-12.

8

beast. Sometimes the recovery turns out to be lower than expected, or even non-existent; sometimes the recovery turns out to be substantial or even enormous." Keirsey v. eBay, Inc., No. 12-CV-01200-JST, 2014 WL 644738, at *3 (N.D. Cal. Feb. 18, 2014). Similarly, it is not unusual to take years to litigate class actions. See id. (lasting approximately two years); Cordy v. USS-POSCO Indus., No. 12-CV-00553-JST, 2014 WL 1724311 (N.D. Cal. Aug. 2, 2013) (extending approximately two years); Vizcaino, 290 F.3d 1043 (extending over eleven years).

Plaintiffs also argue that class counsel achieved an excellent result for the settlement class, but do not cite any cases or proffer evidence to suggest this settlement represents such a significant degree of success as to justify adjustment. Here, class counsel engaged in motion practice, amended the operative complaint three times, and engaged in discovery and mediation. While Plaintiffs survived two dispositive motions, this simply reflects the ordinary nature of the adversarial process of litigation. ECF No. 110 at 5; cf. Vizcaino, 290 F.3d at 1048-49 (finding that counsel achieved exceptional results for the class because they "pursued this case in the absence of supporting precedents," plaintiffs lost twice in the district court, and succeeded twice in reviving their case on appeal). Further, Plaintiffs concede that individual class members will receive a relatively small award, which weighs against revising the award to 33% of the common fund. ECF No. 108-1 ¶ 11; see Keirsey, 2014 WL 644738, *3 (finding that "although the Settlement Award was fair and reasonable in light of the amount in dispute, it cannot conclude that the relatively small amount each Class Member will receive" justified an upward revision in attorneys' fees). In the aggregate, Plaintiffs' counsel recovered about a third the amount they could have recovered if they had prevailed at trial. This result, while deserving of approval, is not an "exceptional" or "unusual" award.

Finally, Plaintiffs argues that their .98 lodestar multiplier "alone supports the requested fee award." ECF No. 110 at 13. This misunderstands the purpose of crosschecking awards with the lodestar. "Courts usually apply the percentage method but then use the lodestar method to cross-check the reasonableness of the percentage to be awarded." See In re Cadence Design Sys., Inc. Sec. & Derivative Litig., No. 08-4966, 2012 WL 1414092, at *4 (N.D. Cal. Apr. 23, 2012) (citing Vizcaino, 290 F.3d at 147, 150). A low lodestar does not alone justify an upward revision of

attorneys' fees, but merely "provide[s] a useful perspective on the reasonableness of a given percentage award." Vizcaino, 290 F.3d at 1050.  While the Court agrees that counsel displayed experience and skill in conducting the litigation, the results obtained and time and effort expended in this litigation are not so "unusual" or "exceptional" as to compel an enhanced attorneys' fee award.  ECF 110 at 10-11.

Accordingly, the Court awards attorneys' fees in the amount of 25% of the common fund, a total of $725,000.  The difference between the amount of attorneys' fees requested ($957,000), and the amount the Court will award Plaintiffs' counsel ($725,000), which amounts to $232,000, will be added to the portion of the settlement fund that is distributed to class members, and will be divided among class members on a pro rata basis—i.e., on the same basis that Plaintiffs have already proposed with respect to the rest of the settlement fund.

## IV.   EXPENSES

### A.   Legal Standard

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted); Fed. R. Civ. P. 23(h) (permitting the court to award nontaxable costs that are authorized by the parties' agreement).  To support an expense award, Plaintiffs should file an itemized list of their expenses by category and the total amount advanced for each category in order for the Court to assess whether the expenses are reasonable.  Wren v. RGIS Inventory Specialists, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011); see also Dyer, 303 F.3d at 334, supplemented, Case No. 3:13-cv-02858-JST, at ECF 52 (Oct. 31, 2014).

### B.   Analysis

Here, Plaintiffs provided an itemized list of the costs and expenses incurred during this litigation, separated by category.  ECF No. 110-1 at 11; ECF No 110-2 at 12.  A large majority of the expenses incurred resulted from the retention of experts, mediation, and traveling to hearings.

ECF No. 110-1.[4] Given the extent of data analysis required to determine which account holders were injured as a result of Umpqua's practice of re-ordering debit transactions and to what extent they were injured, the expenses required for data and damage experts appear to be appropriate.

Travel expenses are another story. Plaintiffs' two law firms initially asked the Court to award exactly $8,000 and $4,000 in travel expenses. ECF No. 110-1, ¶¶ 22, 23; ECF No. 110-2, ¶ 10. Because these round numbers gave the Court pause – even in the light of Plaintiffs' counsel's statement that they had exercised "billing judgment" – the Court directed Plaintiffs to submit receipts for all travel expenses so the Court could assess whether the expenses were reasonable. See Wren, 2011 WL 1230826, at *30; ECF No. 112. Plaintiffs then submitted receipts and additional declarations. See ECF Nos. 114 & Exs.

The Court has reviewed the receipts and finds that Plaintiffs' counsel has substantiated its request for reimbursement as to the following costs:

| Date | Description | Amount |
|---|---|---|
| Tycko & Zavareei LLP | | |
| 8/22/12 | Uber cab | $65.00 |
| 8/22/12 | Travel meal at Five Guys | $8.28 |
| 8/22/12 | Travel meal at Vesuvio | $29.00 |
| 8/22/12 | Internet access | $17.95 |
| 8/23/12 | Travel meal at Peet's | $5.60 |
| 8/23/12 | Travel meal at Market Bar/Café (with co-counsel) | $153.41 |
| 8/24/12 | Airport parking | $72.00 |
| 8/25/12 | Hotel W (food and lodging) | $873.18 |
| 8/29/12 | Uber cab | $68.00 |
| 7/10/13 | Uber cab from SFO to court | $65.00 |
| 7/10/13 | Uber cab from court to SFO | $65.00 |

---

[4] For example, the table of expenses provided by Attorney Zavareei indicates that "Data and Damage Experts" cost his firm $38,854.33, which makes up more than half of amount of the expenses listed. ECF No. 110-1.

11

| Date | Description | Amount |
|---|---|---|
| 7/10/13 | Uber cab | $20.00 |
| 7/10/13 | Travel meal at Peet's | $3.25 |
| 7/10/13 | Travel meal at the Plant | $6.00 |
| 7/10/13 | Travel meal at Hilton Urban Tavern | $60.20 |
| 7/10/13 | Travel meal at Colocsseo | $44.35 |
| 2/24/14 | Meal at Ris Restaurant (deposition) | $101.70 |
| 2/24/14 | Meal DC Coast Restaurant (deposition) | $125.39 |
| 9/3/14 | United Airlines roundtrip flight | $431.20 |
| 9/4/14 | Travel meal at Stacks | $27.42 |
| 9/4/14 | Uber cab | $66.00 |
| 9/8/14 | Four Seasons Hotel (food, lodging, parking) | $717.60 |
| 9/8/14 | Hertz car rental | $104.42 |
| 9/8/14 | Travel meal at Paradies | $45.82 |
| 9/9/14 | In-flight meal | $13.98 |
| 9/9/14 | Uber cab | $55.42 |
| 2/19/15 | Uber cab | $68.85 |
| 2/19/15 | Four Seasons Hotel (food, lodging, and internet access) | $539.21 |
| 2/20/15 | Luxor taxi | $13.30 |
| 2/20/15 | Taxi | $56.65 |
| 2/23/15 | Taxi | $76.80 |
|  | Kopelowitz Ostrow P.A. | |
| 8/22/12 | Taxi from SFO to court | $52.65 |
| 8/22/12 | Travel meal at 459 Geary (with co-counsel) | $67.00 |
| 8/22/12 | Travel meal at Trattoria Pinocchio (with co-counsel) | $140.82 |
| 8/23/12 | Travel meal at Delarosa (with co-counsel) | $111.14 |
| 8/24/12 | Travel meal at Hotel W | $22.13 |
| 8/24/12 | Airport parking | $42.00 |
| 2/11/15 | Virgin America roundtrip flight | $506.20 |
| 2/19/15 | Internet access | $22.95 |
| 2/19/15 | Uber taxi from SFO to court | $68.95 |
| 2/19/15 | Travel meal at Lark Creek Grill | $9.00 |
| 2/19/15 | Travel meal at R&G Lounge | $52.60 |

| Date | Description | Amount |
|---|---|---|
| 2/23/15 | Uber taxi to SFO | $68.85 |
| 2/23/15 | Airport parking | $21.00 |
| | Total: | $5,185.27 |

Plaintiffs' counsel also submitted receipts for airline travel, including three roundtrip flights in the amounts of $2,503.60, $2,387.80, and $2,317.60, and one one-way flight that cost $1,667.10. Because counsel also submitted receipts for roundtrip flights that cost $431.20 and $506.20, the Court can only assume that the larger amounts reflect charges for first- or business-class tickets. The Court finds that first-class airplane flights are not a reasonable expense or one that would normally be charged to plaintiff-clients in a consumer class action. See Harris, 24 F.3d at 19; Wren, 2011 WL 1230826, at *30. The Court will, however, reimburse Plaintiffs' counsel at the coach rate for these flights, as reflected by other coach flights counsel actually took – i.e., $431.20 per roundtrip flight between San Francisco and Washington D.C., and $506.20 for a roundtrip flight between Fort Lauderdale and San Francisco. For the same reason, counsel will be reimbursed $215.60 (half of $431.20) for the one-way flight from Washington D.C. to San Francisco on February 19, 2015. Plaintiffs' counsel will be reimbursed the entire $799.10 for a one-way flight from San Francisco to Washington D.C. on February 19, 2015, since this appears to be a coach flight. Thus, in total, Plaintiffs' counsel will be reimbursed $2,383.30 for airfare (in addition to the airfares the Court itemized separately in the table above).

The Court will not reimburse Plaintiffs' counsel for movies or games ordered on their hotel bills (which totaled $27.98) or a last minute flight-change (which cost $101.20). The reimbursement amounts reflected in the foregoing table take account of these deductions.

Also, while Plaintiffs' counsel have submitted other receipts in support of their request for reimbursement, the receipts for Kopelowitz Ostrow's stay at the W Hotel in San Francisco from August 22, 2012 until August 23, 2012 does not provide enough information upon which the Court can decide to grant an award of $525.15. Given that counsel may have charged meals, entertainment, or other items to the hotel bill, the Court needs an itemized receipt or some other

more detailed documentation to reimburse counsel for this expense, particularly given the amount spent on a single night's lodging. Rather than request still more documentation, the Court will award $300.00 for this item.

In short, based on the available documentation, the Court finds that Plaintiffs' counsel are entitled to 7,868.57 in reimbursement for travel expenses ($5,877.08 for Tycko & Zavareei's costs, and $1,991.49 for Kopelowitz Ostrow's). The difference between what Plaintiffs' counsel requested in reimbursement for travel expenses and what the Court has awarded will be added to the common fund for distribution to class members on a pro rata basis.

The Court will also approve the other, non-travel expenses that Plaintiffs' counsel have requested reimbursement for, with one exception. Plaintiffs' counsel identified a $3,000 mediation fee that they accidentally double-billed. Therefore, Plaintiffs' counsel seek a $3,000 downward adjustment from their initial fee request. ECF No. 114, ¶5. The Court will adjust the award accordingly.

In light of the additional declaration and receipts Plaintiffs' counsel have provided, the Court hereby grants in part Plaintiffs' request for reimbursement of litigation costs and expenses. Plaintiffs are entitled to reimbursement of $105,990.25.

## V.     INCENTIVE AWARDS

### A.     Legal Standard

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). "Incentive awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez, 563 F.3d at 958-59 (internal citation omitted). Further,

> The district court must evaluate [incentive] awards individually, using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation.

14

1   Staton, 327 F.3d at 977 (citation and internal quotations and alterations omitted).  And district

2   courts must scrutinize "all incentive awards to determine whether they destroy the adequacy of the

3   class representatives."  Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1165 (9th Cir.

4   2013).

5         Courts have also considered as additional factors:  the disparity between the amount the

6   average class member will receive and the amount of the incentive award, id., 715 F.3d 1157,

7   1165 (9th Cir. 2013), and the percentage of the total common fund comprised by the incentive

8   award, Krzesniak v. Cendant Corp., No. C 05-05156 MEJ, 2008 WL 4291539, at *1, *3 (N.D.

9   Cal. Sept. 18, 2008).  Many courts in the Ninth Circuit have also held that a $5,000 incentive

10  award is "presumptively reasonable."  See, e.g., In re Toys R Us-Delaware, Inc. FACTA Litig.,

11  295 F.R.D. 438, 470-72 (C.D. Cal. 2014).

12  **B.    Analysis**

13        Plaintiffs request incentive awards of $5,000 each, a total of $15,000, to Amber

14  Hawthorne, Victoria Kneer, and Christopher Kneer.  ECF No. 110.  Named plaintiffs

15  (1) submitted to interviews with class counsel; (2) located and forwarded responsive documents

16  and information, including submitting verified responses to interrogatories, responses to requests

17  for production, and responsive documents for production; and (3) participated in conferences with

18  class counsel.  ECF No. 108 at 9; ECF No. 116.  No one has objected to the proposed incentive

19  awards.

20        The requested incentive awards in the aggregate represent .005% of the settlement fund,

21  which percentage is in line with awards found acceptable in other similar class actions.  ECF No.

22  108-1; see Hopson v. Hanesbrands Inc., No. CV-08-0844 EDL, 2009 WL 928133, at *1 (N.D.

23  Cal. Apr. 3, 2009) (approving $5,000 incentive award to one named plaintiff, comprising 1.25% of

24  the settlement amount); In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000)

25  (approving incentive award of $5,000 to two plaintiff representatives in $1.75 million settlement,

26  comprising only 0.56% of the total settlement).  Further, while $5,000 is far greater than non-

27  named class members will receive from the settlement, $5,000 is the typical enhancement award in

28

this Circuit.[5]  See Harris, 2012 WL 381202, at *7 ("Several courts in this District have indicated that . . . as a general matter, $5,000 is a reasonable amount.") (citations omitted); Ko v. Natura Pet Prods., Inc., No. C 09-02619 SBA, 2012 WL 3945541, at *14-15 (N.D. Cal. Sept. 10, 2012) (denying a $20,000 enhancement award request, and instead awarding $5,000; though class representative expended approximately 100 hours and attended mediation, the average award to class members was $35); cf. Boring v. Bed Bath & Beyond, No. 12-CV-05259-JST, 2014 WL 2967474, at *3 (N.D. Cal. June 30, 2014) (holding that $7,500 was a reasonable enhancement award when average payment to class members was approximately $170.83; class representative traveled to, and attended mediation, risked backlash from defendant (his employer), contributed a significant amount of time and energy to the litigation, and signed a broader release than did other class members).

In light of the above factors, the Court concludes that $5,000 is a proper incentive award to compensate the named plaintiffs for the time and effort they spent in connection with this litigation and the risks they took on behalf of their fellow class members.

## VI.  CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1. For the reasons set forth in its September 15, 2014 order, the Court confirms its certification of the class for settlement purposes only.

2. The Court grants final approval of the proposed settlement.

3. The Court appoints Plaintiffs Amber Hawthorne, Christopher Kneer, and Victoria Kneer as class representatives and grants each an incentive award of $5,000.

4. The Court appoints as class counsel Kopelowitz Ostrow P.A. and Tycko & Zavareei LLP and grants an award of $725,000 in attorneys' fees.  The Court grants

---

[5] Plaintiffs have not specified the average payment that each class member can expect to receive; the Court could deny their request on this basis alone.  See Otey, 2014 WL 1477630, at *10 ("The Court cannot conclude that the requested awards are reasonable, however, because Plaintiffs do not provide any information as to how much money each class member is expected to receive, or what the average recovery for each class member will be.") (citation omitted).  But the Court has calculated its own estimate: on average, class members will receive approximately $46.97 ($1,955,337.60 (settlement fund less administration costs, 25% attorneys' fees, and costs) divided by 41,633 (number of class members)).

16

in part the request for costs and expenses.  The Court hereby awards class counsel $105,690.25 in costs.

5. The class members who asked to opt out of the settlement are excluded from the class.

6. The clerk shall close the file.

IT IS SO ORDERED.

Dated:  April 28, 2015

_____
JON S. TIGAR
United States District Judge

17